Climates in each case. And first to argue is Mr. Nielsen. Thank you, Your Honor. It feels a little bit like déjà vu. This is a new one, but it's déjà vu in a couple of respects. One, just because I was literally just here, but also because this case has been here, this is the third time. But the question is about how the IEL and BEL frameworks work together. And I want to address some of your questions because I think that they are fair, and part of it is just this is a confusing settlement. They might not be fair, but go ahead. No, no, no. They are fair. And so here's the broader point. BP's position since day one is that the IEL framework is just inapt for business owners. If you own a business, your claim is probably brought under the BEL framework because you can't – it's arbitrary how you pay yourself. So you can either take it all as profit or you can take it all as wages or you can take it all as the value of the business. It's up to you. This isn't like an adverse – not an adverse party, but a non-related party transaction. Sometimes, as with Mr. Fixel, it's the same person. But I guess my thought pattern is that makes sense. That consistency makes sense if you stay inside the framework. But BP, like arguably exhausted – maybe your view of them would be different – claimants can opt out and come up with whatever number they want, double recovery, anything they want to get it over and done with. Sure, that's right. So let's go to the next part of this. Yeah. So if you accept the first part of our argument, which is – No double recovery within the system. No double recovery within the system, and the way the system is built to avoid that is by saying file BEL claims. Yes. Okay. Now you have a BEL claim. Under Section 10 of the big settlement, that's the only claim that you have. You have nothing else. All you have is that – Well, if you file the IEL, it gets flushed out. Correct. If you have an IEL, it gets flushed out. Under Fleshman too. So you try to bring a maritime action or something. All you have is the BEL claim. That's all you have. And now somebody comes up to you and says, we want you to settle your BEL claim. And you say, well, under what terms? And you go back and forth like you do in any sort of negotiation, and you say, yes, I settle it. At that point, the settlement hasn't changed. Nothing about the big settlement, the class settlement, has changed and now suddenly allows you to start filing IEL claims. The IEL framework was never built for a business owner. How you end up resolving your BEL claim, the IEL framework is agnostic to that question. But you can't bring an IEL claim because if you could, again, from the get-go, that would be double recovery. Let me ask you. Yes, Your Honor. There's been argument. The arguments are that this neutral program is not within the BEL framework. Now, I don't understand that. It seems to me, why is it not within the BEL framework? It's part of the BEL framework. That's our position too, Your Honor. But, I mean, why is it not? I don't understand why it is not. I mean, is it a stranger to the entire transaction? So this is how we would formulate it, Your Honor. I think that we're saying the same thing. Often, circuits will have a mediation program or district courts will have a mediation program, which is you bring your claim, and then there's somebody whose job is to look at it and have the sides talk and see if there's some way we can get rid of this claim without going through the judicial process. Nobody says that the mediation is somehow outside of the judicial process. Why? The mediation, all they're trying to do is take the claim and get it resolved by mutual consent within the process against the backdrop of nobody's going to agree to pay more than the claim is worth, and nobody's going to agree to accept less than they think that they can get by litigating. So to say that a mediation is outside of the framework. So to go back to your point, Your Honor. Well, stick with that a little bit because that's helpful. But I guess if the settlement agreement is, what, 1,200 pages long? Yes, Your Honor. And BP fought really hard and, as you said, had a big win in Fleshman too. Yes, Your Honor. So if we go into the black box neutral world and we're going to come up with a number, it has to always include that advantage we obtained. But what are the advantages that the claimants have to always get? In other words, I'm assuming your theory of this whole thing is the framework. We have a confidential process. Just fix it. But we're going to look behind that curtain and make sure the business didn't lose a double counting. I'm asking you, when we start looking behind, what are we going to be giving claimants that they can never opt out of? Okay. Well, I'm not sure this is looking behind. This is looking on the face. When you go into that settlement discussion, I know I'm representing a claimant. Yes. I want to know, one, what is the value of my claim? Two, what is my risk transfer payment on this claim? That's the total number. But how does a court review? I thought the system was completely confidential. How are we going to look behind to make sure the framework, which is 1,200 pages long, was honored by this take-it-or-leave-it settlement? The way that I would say that you do that is look at the fact that they have released their BEL claim. They have not. So to go back to my point about there's an IEL and a BEL, the IEL is agnostic to how you resolve your BEL because you can never file an IEL. Now, all the court has to know is you have a BEL claim, and now you don't anymore. Case closed. The court doesn't need to look behind whether your BEL claim was resolved in such-and-such a way. The framework of the settlement says you have a BEL claim, and now you, the claimant, has determined that you're happy with your voluntary resolution. Well, that's no different from any other case that comes before a court where you have two parties arguing about a contract. The contract has a framework, and then suddenly the case just disappears from the docket. That's not like, oh, did you really honor X, Y, Z provisions? No. You'd say, of course, that is your only claim. That is the only claim that you have. There's a release. You have one claim. It's a BEL claim. And now you're voluntarily withdrawing your BEL claim. The court doesn't have to worry about protecting you. The lawyer can protect you well enough because the lawyer is making the determination, is this claim what we're getting? I think you said before, and it's certainly been my understanding for the last seven years, is the judge that knows this entire system, all aspects, is Judge Barbier. Correct. If you were persuasive, would you object to us remanding so Judge Barbier can interpret the settlement agreement in the first instance and how it relates to both programs? Why wouldn't we let him take a crack at these difficult arguments? So, Your Honor, obviously this court has complete discretion. What's your thought on that? Well, I mean I'll say this as being candid here. We have been at this question or variations on this question for 2012 – six years now, almost seven years now. No, but it all starts with Fleischman. The issue now that's specific is post-Fleischman does it apply to the neutrals? All right. Well, again, that's where I respectfully disagree just a little bit, which is the fight is can you avail yourself of an IEL claim or is the BEL claim your exclusive path? And that's the fight we've been having since day one, and I thought the Fleischman II would resolve. Well, if that's the case and if your court reads Fleischman II the way that we read Fleischman II, there's no purpose of a remand here. This case should just be dead because this court should vindicate its own decision. I guess the first remand is he's not reviewing any of the appeal panels, and there are a lot of them that are interpreting Fleischman differently. Correct, Your Honor. And again, it's impossible for me to know why Judge Barbier has denied discretionary review on this. So rather than handcuffing him, why not let him, who knows the entire system and how it all comes together, make the decision in the first instance? Just say you ought to discretionarily review these. There's some tension. We're finding difficulty. Well, I'm a bit afraid that it's a game of ping pong, a little bit. This is why. I think Judge Barbier – again, I can't know for sure, so I'm not – don't say that I'm, like, stating things for Barbier. He hasn't said so himself. The question of what Fleischman II means – this is – Judge Barbier knows what the settlement means. This court knows what Fleischman II means. It's this court's own decision, right? So Judge Barbier, I guess in theory, could go and look at it and say, well, I read Fleischman II to mean X. But ultimately, at the end of the day, the Fifth Circuit decides what Fleischman II means. And if he ends up saying X and the other side doesn't like it, then we're going to be right back up here to this court. This court knows what this court's decision means, and that's why I would say this is a bit different than some of the others. But obviously we wouldn't strenuously object because, again, we think that we won this issue with Fleischman in front of Judge Barbier and then back up in front of this court. Judge Barbier knows who the neutrals are. He knows how that process works. He oversees both the neutrals and the settlement part of the program. Now, it may be helpful. I mean when I say exactly, I mean it is for us to interpret our own decisions. But, I mean, it could be that Judge Barbier could enlighten that decision by matters that are not before us now. I don't know. I mean I suppose that's possible. What would he look into if we remanded it that would help this court better understand Fleischman, its ramifications, and its practical impact on the settlement program? Well, I mean my immediate reaction, Your Honor, is with respect – I would ask my friends that. I don't quite know what he would say because it seems to me that this court has said that the IAL framework is out of bounds for this sort of thing, and that's a question of law. It's just a denotable question. But in Fleischman, we don't mention the neutrals. It's completely irrelevant. It's not in the case. Correct, correct. So he would have a lot to say about how the two completely different halves of the oyster relate. So he wanted to talk – so just a second. So assuming I'm right about what this court held in Fleischman too, that the IAL framework is agnostic to the BEL framework because it's just per se out of bounds. Well, then there really is nothing left. All this is is just a straight-up question of interpreting the settlement. One thing that Judge Barbier, I suppose, could discuss on remand is are these neutrals changing the class settlement? Is the neutral program somehow making this part, which was not – the IAL framework which didn't allow BEL claims – claims by business owners. Has that somehow amended or modified the settlement? But that can't possibly be correct as a matter of law. How could somebody who has no authority – the neutrals, they're not a party to the settlement. Again, they're a mediator. How could they possibly change the structure of the IAL program? The IAL pact on the settlement. So it's true you could ask Judge Barbier on remand, is it true that the neutrals just adhere to – that the neutrals don't change the relationship between the IAL and the BEL framework? But what answer could he give other than of course that's true. They can't possibly change the classified settlement. All they are is like a mediator or any other sort of settlement facilitator, but they work within the law, and the framework of the law here is the class settlement. And the class settlement, again, as interpreted in Fleischman, which again we think is 100 percent correct, says you've got to go through the BEL framework, and the BEL framework applied here. One more point that I think is important to emphasize, and that is there is no question that there is some double recovery here, at least if their theory were allowed to apply. There is certainly some double recovery, and how do we know that? Because they're getting some money from the BEL pool, and they're getting money from the IAL pool. That's double recovery. By any way you look at it, that's double recovery, and that can't possibly be correct. I would point the court to Walker Fisherman, which says, as we read it, in interpreting the settlement, if it's a close question, rule against double recovery. Well, here this is obviously double recovery. We don't think it's even a close question, especially after Fleischman too, but this would be double recovery if this was permitted. So that's surely the case. The question is, if this court wants to re-imagine Judge Barbier to say that somehow the creation of mutuals allowed this double recovery, I don't understand logically in law how that could possibly be true. All they are asking is consensus as a mediator. Here's our offer. The other side is willing to settle at this rate. Will you settle at this price? You've already released all of your other claims. You can't file an IAL claim under the structure of the settlement. All you have is a BEL claim. Do you want to resolve your BEL claim at this price or do you want to go through – if you have a right to do, go through all the way through the BEL process. This doesn't strike me as any different than any other settlement. I've been talking for a while, Your Honors. If you don't have any other questions, I'll save my time for rebuttal. Thank you, sir. Thank you. Ms. Warner. Good morning. I'm Chelsea Warner. I'm here on behalf of the claimant appellees, and may it please the court. We ask the court today to affirm the denial of the discussion and review for two primary reasons. One, the neutral payment of the businesses and subsequent withdrawal of the BEL claim obviated any double recovery. That position right there is in step with all of the appeal panel decisions issued post-Fleishman specifically on this issue. Particularly, there are eight. These appeal panel decisions are briefed thoroughly in our response, as well as in the 28-J letter that we submitted, I think, last week. And two, interpreting the Settlement 8 framework, these IEL claims are permissible. Now, going specifically into a double recovery decision, what really constitutes a double recovery is when there's multiple payments from within the court-supervised settlement program, within four corners of the document. And that's not what's present today. The business cases were withdrawn from the settlement. And if you go through the appeal panel decisions, they uphold that specific instance. Specifically, I'm going to go into appeal panel decision 2017-3425. That one said there's a nonexistent double payment of an IEL claim of an owner-officer because the BEL claim was never filed in the court-supervised settlement program. And if you look further into even the ones that are specific to the neutral payments of the business, they all uphold this position, that double recovery is obviated when the business claim is withdrawn from the settlement program. And you go into the question, well, why is that? The neutrals were appointed by the district court to expedite these business claims that had been essentially bogged down in the claims process for years. BP contends that, of course, they used the settlement framework or, of course, they used Exhibit 4 in their calculations. But the common-sense approach is what is the court's reasoning or rationale to appoint individuals to expedite claim process and then to run the same calculations that the court-supervised settlement program already existed for? So the businesses faced a choice when they received an offer from the neutrals. They could get out of the settlement and take that offer, or they could remain in the court-supervised settlement program. But obviously, in this situation, they decided to settle their business as an extrajudicial settlement as decided in the appeal panel decisions and end their business case. But again, that withdrawal of the business claim obviated any double recovery. Because double recovery exists within the four corners of the documents when there's competing claims within the CSSP. We don't have competing claims within the CSSP because the business claim was withdrawn. So we can go further into—I know Judge Higgins and you were discussing, too, about remanding back to the district court. And I want to point to you to Appeal Panel Decision 2018-1236. Wait a second. Sorry. You say—I was trying to put this back, reading the briefs. Whenever you made the settlement, you withdrew the BEL claim from the BEL settlement? Yes, sir. That was on the condition in order to accept the neutral payments, your business claim had to be withdrawn. What were you being paid for then? It was for the business loss itself. It would say business losses, business profits. Again, we don't have—there's nothing in the record under the neutrals of how those figures were derived from. It was a take-it-or-leave approach, secretive, proprietary. It's speculation, and BP has yet to show that there is— But you withdrew all your BEL claim from the BEL settlement? Yes, sir. How do you do that? Once you received the offer from the settlement, you filed a withdrawal within the settlement program. It systematically closed them in the framework. Doesn't that effectively make it there's no basis for this settlement? I'm sorry, which— If you withdraw all of your—you're settling a BEL claim, as I understand. Yes, sir. And then you get your money, and then you withdraw your BEL—all BEL claims? Yes. The business had the option. As they were currently filed in the court-supervised settlement program, there would have been profits. What was the money paid to you for? It was for the business loss, business profits. Again, as to the direct calculation, I would say that's the distinguishing point here. We don't have those calculations of what the neutrals used, versus if they left it in the CSSP, it would have been included in that. But BP even conceded— At what point did you withdraw? Upon receiving the offer of the neutral payment. When the business decided to accept the neutral payment, the claim was withdrawn. It was contingent—the BEL claim was withdrawn. It was contingent upon that fact. Was anything done at that time to make sure that there was a double recovery? Your Honor, we would submit— Was there some kind of credit given? Sure. The IEL claims were actually filed at the time, prior to the time of the BEL— or of the neutral payment in this situation, so the IEL claim was already in the system at that point, because at that point, that was, again, pre-fleshman. So at that point, there was a split in the appeal panel decisions under the situation, which is the only time the case has ever—this Court and even the district court— has upheld that there is double compensation when a BEL claim is paid because of that fixed-cost designation. All right. Now, at the time that you withdrew your BEL claims and the settlement was negotiated, I suppose BP had to agree to the settlement. They were paying the money, right? Yes, sir. And did they agree to your withdrawing the claim and still paying you the money? Yes. Your Honor, yes. Both required the release. It was a separate release from the neutrals. It wasn't the court-supervised settlement release. It was a separate release in order to receive the neutral payment. And BP also had to sign off on that as well. And I know those releases are not part of the record today. The only thing of the record today and really at issue today is the IEL claim and the IEL framework. And that's really why we're here today. There is no double recovery. There's been uniform decisions on the appeal panel—on appeal panels post-Fleishman. What was your withdrawal of the claim supposed to mean or accomplish? So that the BEL claim was no longer being processed. It was no longer going to run through Exhibits 4 and 4 through 7. It wouldn't be processed under that framework. It was an option. You stay in or you can get out and take the funding. I mean, I know my questions are naive and demonstrate undoubtedly ignorance on my part about a lot of the aspects of this settlement. But what were your business—you excluded from your business losses the salaries and compensation that were paid to the business owners. And then what was left? The physical destruction of the business or what? So, Your Honor, I guess if you're trying to ask are there two separate losses or if that's your question, they were looking at—they're separate entities. They're individual W-2 wagers versus the business profits of what the BEL or the business claim was specifically submitted for. BP conceded even in their briefs that the neutrals were, quote, in control of the amount they offered. That's on page 25 of their brief in these cases. So BP has conceded that the neutrals were not bound by the BEL framework. And, again, if the BEL framework isn't used, then there is no double recovery. Let's say the BEL framework has to be used. Is there anything a claimant like your clients would want? We would always review these black box things to make sure the claimant's got something. But, yeah, I mean, they're separate losses. Again, we're looking at a W-2— No, but you understand my question. If they prevail and the mediators cannot opt out of the Fleischman II process, would there be anything that Battle and Fixel would be entitled to? We would have to look behind the number to make sure they didn't get out of it. Right. It's that fixed-cost designation. And that's where all the justifications, all the appeal panel decisions, even this court's ruling in Fleischman, all harped on that fixed-cost designation of owner-officer compensation because that is present in the BEL framework. But, again, these cases were removed from the BEL framework. They were removed from the settlement program. And the only thing left currently in the settlement program and in front of the court today are these IEL claims that are processed under Exhibit 8. And your position is that BP is very aware that they are there. Absolutely. And they still agree to the settlements and the release provision. Yes, Your Honor. We would submit they were. And if you—I mean, in addition to the fact that BP, you know, mentioned it in their—cited it in their brief that the neutrals are in charge or in control over the amount they offer, they also mentioned it in their request for discretionary review, that the offers may vary from what the court— what the court-supervised settlement program would have provided. So they've conceded it now twice. So, essentially, when, you know, Judge Barbier got these cases in front of him, and he has this court's ruling in Fleischman, the controlling law, we have the settlement agreement and two IEL claims. And the appeal panelist read, presumably, because Fleischman was cited in that briefing to the appeal panel, that this is the appropriate interpretation and application of it. These IEL claims are permissible under the terms of the settlement. There's no double recovery. Double recovery was obviated by the withdrawal of the business claim. And that's the only issue really, you know, did— From the consolidated case argument moments ago that you listened to, where you heard the response, but it can't be so because of Adam Smith. It can't be so. It will freeze up the system. What is your answer to that? Again, everything has to go to the, you know, the settlement agreement and whether or not that fixed-cost detonation were there. It's not present. And they've yet to—they've not yet to show anything. The BEL framework allowed for, as I think they called it— But his argument is they will no longer agree to any neutral settlement. If we were to interpret it that way, they won't agree because they will always want to be able to zero out on deflation to the wages. I guess we would essentially put it on BP to then establish the appropriate documentation to review that or have it on contingent that they withdraw an IEL claim as well or show that fixed-cost detonation, show the calculations that would allow for that. But, again, that's not what we have here today. You know, the IEL claims are the only ones under the settlement. That's it. And the settlement can't control from the shadows, and that's essentially what BP is asking you to do is rewrite the settlement and say, well, if a business is paid somehow or another, then necessarily the owner-officers are entitled to compensation. Do you agree that both parties in the Consolidated case moments ago agreed that Section 4 does control this outcome? I didn't read Fleischman, too, to say that the settlement agreement was expressive of this. No, I would not— But he quoted the parenthetical language. What would your answer be to that? I would not say that Settlement 4 at all controls. Exhibit 4 is the BEL framework, which wasn't used in this case. Exhibit 8 controls. That's the IEL framework. Exhibits 4 through 7 are reserved for business claims, and that does not control because the claims were withdrawn from the settlement. And, again, in going through the appeal panel decisions, eight post-Fleischman have concurred with our position. How did your withdrawal of these claims—how was it worded? I mean, was it global in terms of all losses that the business had suffered? No, sir. It was just specifically the claimant ID number and the business name. So the business name, the claimant ID, hereby withdraws the claim, and within the court-supervised settlement program, that was the withdrawal. It did not release any individual owner-officer because, again, they're separate entities and even separate losses. Your position is once that happens and BP has to agree to the settlement, they know they could face an IEL claim? Yes. Yes. And if they don't like it, they could refuse to settle? Yes, because, I mean, the neutrals were— BP had to have agreed to the neutral payments to begin with because then you go back to the— why would Judge Barbier had appointed these neutrals to do the exact same thing that the settlement had existed for for years? This was to expedite the process. And, again, a secret protocol— Tell me specifically, you got what, $487,000? How much money did you get in the settlement? From the—I guess for the individual economic loss claims— No, no, no, no, no. From the— The neutral payments are on the record, Your Honor. They're, I guess, separate claims against separate entities. So we would submit that's more or less not relevant to the issue at hand because, again, they're separate losses. Why did prior counsel have a specific number? Again, they might have cited it in their record. I don't know that specific, but it is not a record on this court today. So, again, I want to point the court to, again, to the 2018-1236 where that appeal panelist actually went to the next step and asked the settlement program about the neutral payments. Say that number again slowly. Yep, sorry. It's 2018-1236. 2018. Okay. And that, again, that's the most recent appeal panel decision that's been cited to—in that 28-J letter. And in that specific case, they went, the appeal panelist, looked at this situation and went to the settlement program to ask to get some more information of the neutral payments. And, again, they upheld claimant's position that the withdrawal of the BEL claim obviates any double recovery. Double recovery exists within the confines of the four corners of the document when there is a paid BEL claim under Exhibit 4. We do not have Exhibit 4 calculations. We don't have those sweeteners, as BP references them in Fleischman regarding the RTP for the business claim specifically, a risk transfer premium, claimant accountant reimbursement. Those are nonexistent. All we have right now in front of this court today is the IEL framework and two IEL claims. Given the consequences and that no one wants double recovery, would it be—why, again, is it wrong to just present Judge Barbier with what I think of as the Fleischman II situation but now suggested to have a shadowy overlay onto a difficult neutral world? It's unnecessary. It's unnecessary, okay. It's unnecessary. There are eight cases that all had the guidance of Fleischman and have all had, you know, had this, and they all upheld this position. The only outlier is the case, you know, this Court just heard in Anabias. Which is pre-Fleischman. Pre-Fleischman. And had a mistake of fact. Yes. Yes, there was a mistake of fact in there because they didn't have, again, they assumed, as BP argued, they essentially adopt, looks, appears to have adopted BP's argument that the BEL framework controls regardless of where the, you know, the business or how the business was paid. And that was the argument they tried to do also in Appeal Panel Decision 2017-226. And that one was actually the business was paid through the Gulf Coast Claims Facility predating the IEL or the BEL framework at all. And, again, the Appeal Panel did not accept that authority, did not accept that position because Exhibit 4 can't control everything, and it didn't control. Because, again, the neutrals weren't appointed to run the same processes and calculations. And that's, I think, that's the biggest crux, and that's what all these decisions have upheld. When you took that claim out of the claims process, it's not controlled by Exhibit 4 anymore. And that's why there is no double recovery on that. The withdrawal of the BEL claim obviated any double recovery. And, again, we would point this Court again. But, again, I mean, you got the money from the settlement program, from the neutrals. In the neutral process, you got paid a sum of money. Yes, Your Honor. And what was that sum of money for? What was it to compensate? To compensate business profits or business losses itself. Again, we're looking at the IEL framework. Okay, that's business losses itself. Yes, Your Honor. Which did not include any compensation that was paid to any officer or owner of the company. Yes, Your Honor. And we would submit that there is no, at least there's no evidence, and B.B. can't cite to any, that the framework was used that would have inherently treated owner-officer compensation. Except you settled a BEL claim. We settled a business claim, but not within the BEL framework. Well, I don't know whether that's true or not. I mean, that's up for argument. I mean, there is no settlement within the CSSP. There is no settlement within that framework. It's a separate, distinct release. I understand, but I mean, I don't understand how settlement process is not part of the BEL framework, but that's another issue. You don't have to argue that. Can I just ask you, when you withdrew your claim, did anybody do anything to say that that loss, because of the spill that's in your claim, cannot be recognized in the BEL settlement claim? Yes, in a way. You had to withdraw your BEL claim from the settlement to take the new transfer. It was on contention that you would move to withdraw your claim from the BEL framework. What were you paid for with respect to your BEL claim? They paid you a sum of money, you have said, for your BEL claim, yet you say we withdrew every aspect of our BEL claim. Correct. The offer, it was a take-it-or-leave-it approach to settle your reduction. Because the BEL framework, you know, compensates reduction. That's an easy question. Somebody puts $500,000 on such take-it-or-leave-it, and I'll take it. And then I say, I don't release you from anything. I just take your money. Well, that's not what was presented. What you did? So, again, the BEL framework inherently compensates owner-officers. After years of it being in the process, you know, the businesses decided when they had an offer, a chance to get out of the settlement, they took it. They received the offer. They closed out their business claim. Their IEL claims were still in the settlement framework at the time, because at that time the IEL, the panels were still. You didn't settle an IEL claim. All you settled was a BEL claim that you declared after it was settled. You declared it to be nonexistent. Well, it was removed. So in the terms of the settlement agreement, there is no IEL claim. Well, if you withdrew it, then there's no basis for the claim. You owe them the money back. No, we withdrew it because we received that offer.  I mean, because you said there was no claim. You have denied the existence of the claim by withdrawing it. Upon receipt of the funding. Once you got the money, you said there was no claim after all. It was removed. It was removed from the settlement agreement. So they paid you for nothing. Oh, we would spend, Your Honor, I would disagree, but there was several payments. Payment for the business losses versus a W-2 wage claim that is currently brought under the IEL framework, which are the claims on appeal today. Before your time runs out, could you speak to 3884? Sure. 3884 needs to be read also in conjunction with Exhibit 8A, subsection 1. And those specific, again, the appeal panel decisions cited in our briefing specifically review these, that the W-2 wages are separate and distinct from distributions and profits. And those distributions and profits are what are reported on those schedules that specifically are listed in subsection 1 of Exhibit 8A. And, again, those W-2 wages are not required, and that's the crucial word in reading that section, is that those income that's supposed to be required to be reported on those schedules are not allowed. Was I right that no appeal panel has accepted the 3884 argument? Correct, correct. And those are all thoroughly mentioned in our brief, that they have all, you know, have reviewed, and I can provide the court some citations now. No, if they're in your brief, that's fine. They're in our brief. And I would just focus on 2018-413. And then also, you know, again, in, you know, appeal panel decision 2906, again, the business never received a payment, and they allowed, again, another owner-officer compensation. I guess my time is up. Thank you, Your Honor. Well, with respect, Your Honors, it sounds to me like this is a game of gotcha. BP could have said, we're going to take this claim all the way through the CSSP, the BEL claim, and then they have no IEL claims. That's obviously true. Instead, BP said, you know what, everybody wants this MDL to end, so we're going to try to expedite this by settling this instead. And now they say, oh, we're going to take the money for the BEL claim, and now we're going to file an IEL claim. Why would BP possibly have agreed to such a thing? Too clever by half. It's too clever by half. It makes no sense for BP to do that. And BP did not anticipate that this could possibly happen because, again, we thought that we had put a dagger through the heart of this thing, and the last time we had this case about the relationship between the two frameworks. If you are a business owner, you cannot file an IEL claim. I thought that's what this court held last time. And if that's the case, then no matter how you resolve your BEL claim, you can't then magically change the settlement and start filing an IEL claim. But I also want to point out something else. Sherlock Holmes, there's the famous dog that didn't bark. Well, here we have a bark, but it's a very quiet bark. We have ten or, they say, eight claims that go this way. The neutrals have settled thousands of claims. So just kind of do the math in your head. The neutrals are settling lots and lots of BEL claims. Where is everybody else? Where are all the other IEL claimants who are saying, oh, you know what, now we get to file an IEL claim? They didn't file these claims because, one, they either understood all along BP's position, to be correct, that you can't use the IEL framework if you're a business owner. But, two, they also surely must have read this court's decision in Fleischman 2 slash double recovery and said, you know what, that means we're out of luck. We have our BEL claim. Like I said, the neutrals have settled thousands of claims, but we don't have thousands of them. One other point. They mentioned the fact that there's all of these decisions post-Fleischman 2 that all go their way. In no respect do I want to denigrate the hard work of the appeal panels. The appeal panels have had a heroic job because there's been hundreds of thousands of claims that have gone through them. But I refer the court to Section 6 of the settlement. There are between 10 and 20 of these people. We don't know who they are. For all we know, it's the same folks who keep deciding the same claims. We don't know how claims are allocated within the appeal panel. So as we said in our 28-J response, an Article III court doesn't decide questions of law by the show of hands. Now, I have seen this cascade effect before. But whether the district court abused its discretion denying review does depend in part on the show of hands. Well, that is in part, and I want to emphasize that, in part. I thought you were saying in the show of hands you're relying on Ms. Veach's case to be the one hand up on the other side. That was your assertion. Against the backdrop of Fleischman 2. Now, that's the question. Fleischman 2, by any account, was a victory for BP. To suddenly have it turn around as if it was a loss, that suggests that something has gone awry in the settlement program. Now, when this court is vindicating its own authority, Judge Barbie, I think, has a responsibility to grant review when the decision is so against the grain of what this court has said. If you say someone files a BEL claim, they withdraw it. Okay. That means you can't file an IL claim. Well, that's the same thing, the same direction as this court said in Fleischman 2. The other — So, therefore, your argument is these eight, the only ones we have, whether we speculate about silence or not, they're all almost catastrophically wrong. Correct, Your Honor. But why then haven't you — why wouldn't you be saying that Judge Barbie should assess that? Fleischman 2 is completely silent about the role of neutrals. Well, Your Honor, like I said, if this court wants to remand to Judge Barbie a, you know, a half-win is better than no win at all, we're happy to keep litigating this case. Our point is only that we have been at this now for years. This question about the relationship between the IEL and BEL framework, this has gone on and on and on. Yeah. No, I agree. That relationship, IEL-BEL, has been resolved by us. I don't see the case that resolves how the neutrals are governed and by what provisions in the settlement agreement. Sure, Your Honor. If you agree that that relationship between the IEL and the BEL framework is already resolved, then I would — But I don't agree that it can't be opted out of. BP can just say we want out and we'll take this deal, whatever the numbers are, whatever is included or excluded. Well, again, I would respectfully submit that if you agree that that question between how you use the IEL and BEL framework is resolved, this case is over. Okay. Because, again, the IEL framework does not allow, categorically, does not allow a business owner to file that claim. You can't do it. If you own a business, you have to go through the BEL framework. That's been our position. Otherwise, you're going to get double recovery. So if that's true, and that's a question of law under the settlement, if you agree with that, then however they resolve their BEL claim is completely indifferent to the question, can I then file an IEL claim? That's a pure question of law. I appreciate your giving me a couple more moments. What result do you seek in this case? In this case, we think that Judge Barbier abused his discretion, and this Court should hold as a matter of law that these claims are impermissible or in the alternative remand to Judge Barbier in the first instance. Thank you, Your Honor. Thank you, sir. That concludes the cases for today, which will be now taken under advisement. This panel will adjourn until 9 a.m. tomorrow morning.